IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, ACTING BY ATTORNEY GENERAL JOSH SHAPIRO, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| HARBOUR PORTFOLIO CAPITAL, LLC, *et al.*, | ) ) ) |
| Defendants. | ) ) |

Civil Action No. 18-989

Judge Cathy Bissoon

## **MEMORANDUM ORDER**

Plaintiff's Motion to Remand to State Court (Doc. 9) is now pending before the Court. For the reasons below, Plaintiff's Motion will be granted and this action will be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania.

## **BACKGROUND**

Pennsylvania Attorney General Josh Shapiro, acting on behalf of the Commonwealth of Pennsylvania ("Commonwealth"), initiated this action in state court alleging violations of several Pennsylvania consumer protection statutes: the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*; the Loan Interest and Protection Law, Act of January 30, 1974, P.L. 13, No. 6, as amended; the Mortgage Licensing Act, 7 P.S. § 6101, *et seq.*; the Installment Land Contract Law, 68 P.S. § 901, *et seq.*; and the Real Estate Seller Disclosure Law, 68 P.S. §§ 7301-14. (See generally Complaint, Doc. 1-1.) Defendants removed this action to federal Court on the basis of asserted diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(b). (Notice of Removal, Doc. 1.)

The Complaint alleges, in sum, that "Defendants unfairly and deceptively lured Pennsylvania citizens into land contracts for the purchase of family homes, under usurious interest rates and based upon implicit and explicit misrepresentations about the nature and terms of the transactions as well as the condition of the homes." (Complaint 1.) In addition to describing the conduct allegedly violating Pennsylvania's consumer protections laws, the Complaint also contains a section titled "Victim Stories," which describes nine exemplary and anonymous stories of individuals who entered into land contracts with Defendants. (Id. at ¶¶ 80-135.) As relief, the Complaint seeks a declaratory judgment concerning Defendants' violations of the relevant Pennsylvania statutes; injunctive relief ordering Defendants to comply with the statutes and make full restitution to all consumers who suffered losses; maximum civil penalties; and "such other relief as the Court deems necessary and appropriate." (Id. at 37-38.)

Plaintiff argues that there is no diversity of citizenship between the parties because the Commonwealth is the real party in interest and it is not a citizen of any state for purposes of 28 U.S.C. § 1332(a). (See Brief in Support of Motion to Remand 1, Doc. 10.) Defendants agree that the Commonwealth is not a citizen of any state under 28 U.S.C. § 1332, but argue that when the Pennsylvania Attorney General brings a lawsuit for the financial benefit of individual state citizens, the real parties in interest are those state citizens. (See Brief Opposing Motion to Remand 2-3, Doc. 15.)

The Court will address the appropriate legal standard for deciding when state-initiated *parens patriae* suits satisfy the requirements for diversity jurisdiction, and then apply that standard to the facts of this case.

**LEGAL STANDARD**

Regardless of the named parties in a lawsuit's caption, the "essential nature and effect of the proceeding" determines whether a state is the real party in interest for jurisdictional purposes. Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n, 598 F.2d 1303, 1306 (3d Cir. 1979) (quoting Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945)); see also Missouri, K. & T. Ry. Co. v. Hickman, 183 U.S. 53, 59 (1901). "Whether a state is the real party in interest will turn on factors widely variant from case to case." Pennsylvania Turnpike Comm'n v. Welsh, 188 F.2d 447, 450 (3d Cir. 1951). Accordingly, the specific context of a *parens patriae* suit brought by a state attorney general to enforce state consumer protection laws is important to the Court's analysis.

A state is the real party in interest when it brings a suit pursuant to its *parens patriae* authority if it has a "quasi-sovereign interest" in the litigation that stands apart "from the interests of particular private parties." Broselow v. Fisher, 319 F.3d 605, 609 (3d Cir. 2003) (quoting Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 607 (1982)).[1] A quintessential example of such authority is a state's action to protect "the health and well-being—both physical and economic—of its residents in general." Alfred L. Snapp & Son, Inc., 458 U.S. at 697. Protecting a state's citizens from unscrupulous or deceptive business practices falls squarely within this category. See e.g., Broselow, 319 F.3d at 609 (Commonwealth was the

---

[1] See also Pennsylvania v. Porter, 659 F.2d 306, 317 n.15 (3d Cir. 1981) ("[T]he proposition sometimes derived from decisions barring a suit when the state acts as a collection agent, that assertion of a distinct [governmental] proprietary interest is a prerequisite to a state parens patriae action is misconceived. . . . [S]uits in vindication of federal property rights are but one aspect of the United States' parens patriae authority. The real bases for that authority are the government's obligations to secure proper law enforcement, and to protect the general welfare. Those obligations devolve upon state governments as well as upon the federal government, and hence afford states an equivalent authority to initiate suits in the public interest." (internal citations omitted)).

3

real party in interest to a suit it brought to protect citizens from misleading advertising by tobacco companies). A paradigmatic counterexample would be a suit in which the state proceeds as a mere collection agent of private parties. E.g., id. (*parens patriae* authority existed because "the Commonwealth did not proceed 'under assignment' from Medicaid recipients"); Porter, 659 F.2d at 317 n.15 (distinguishing "collection agent" suits from *parens patriae* suits in which the state is the real party in interest).

When a suit incorporates aspects of both categories, a court must look at the complaint holistically to determine whether the state advances a genuine quasi-sovereign interest. See, e.g., Hood ex rel. Mississippi v. Bristol Myers Squibb Co., 2014 WL 12631668, at *2-*3 (D.N.J. July 22, 2014) (examining the state's claims as a whole, including its claims for individualized civil penalties and injunctive relief, to determine that the state is the real party in interest in a consumer protection enforcement action); West Virginia ex rel. McGraw v. Bristol Myers Squibb Co., 2014 WL 793569, at *3-*6 (D.N.J. Feb. 26, 2014) (same); Harvey v. Blockbuster, Inc., 384 F. Supp. 2d 749, 755-56 (D.N.J. 2005) (same). If a state files suit to enforce a consumer protection statute through an injunction, this is typically dispositive of the state's status as the real party in interest. E.g., Hood ex rel. Mississippi, 2014 WL 12631668, at *2 ("injunctive relief alone supports the position that the State is the only real party in interest"); West Virginia ex rel. McGraw, 2014 WL 793569, at *6 ("I underscore the fact that in this suit, the State is seeking the remedy of injunctive relief. This alone supports the position that the State is the only real party in interest.").

4

**ANALYSIS**

Defendants contend that if a state seeks money damages to compensate individual citizens, regardless of any other relief sought, the relief does not "inure to [the state] alone," Missouri, Kansas & Texas Railway Co., 183 U.S. at 59, and therefore the state cannot be the real party in interest for jurisdictional purposes. (Brief Opposing Motion to Remand 2.) Plaintiff argues to the contrary that a long line of decisions from various jurisdictions hold that a state is the real party in interest when its attorney general brings a lawsuit to enforce the state's consumer protection laws, thereby seeking injunctive relief, civil penalties, and restitution for consumers. (Brief in Support of Motion to Remand 4 (citing, for example, Washington v. CLA Estate Servs., Inc., 2018 WL 2057903, at *1 (W.D. Wash. May 3, 2018) ("Plaintiffs' position that a state cannot claim real party in interest status when it sues for broad prospective relief and also for restitution for a limited set of consumers has been rejected by the majority of courts.")).

Defendants, in opposing remand, rely heavily on In re Avandia Marketing, 238 F. Supp. 3d 723 (E.D. Pa. 2017). The court in that case adopted the reasoning that Defendants urge this court to adopt, and that several Courts of Appeals outside the Third Circuit have adopted. Id. at 730, 730 n.38 (reasoning that diversity would not be defeated where "the relief sought would not inure to the benefit of the state alone" and citing Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 737 (9th Cir. 2011)). However, the In re Avandia Marketing court distinguished the "unusual" posture of its case, in which, five years after a California County initiated a consumer protection lawsuit in the United States District Court for the Northern District of California (that was transferred to the Eastern District of Pennsylvania by the Judicial Panel on Multidistrict Litigation), the County then sought to dismiss the case on the basis that subject matter jurisdiction was lacking. Id. at 724. In re Avandia Marketing is indeed unusual in

5

several other respects as well.  First, In re Avandia Marketing did not involve the federal removal statute, as it was originally filed in federal court.  Id. at 729-30.  Thus, the presumption in favor of resolving doubt as to jurisdiction against removal did not apply.  Id. at 730 n.35.  Other considerations, like "concerns of federalism" and the "traditional preference to allow a plaintiff to choose the forum of litigation," id. (quoting 1-8 Moore's Federal Practice and Procedure § 8.05 (2015)), cut in opposite directions between the instant case, in which the state itself filed suit in state court and seeks remand, and In re Avandia Marketing, in which a county (not initially claiming to be the state) filed suit in federal court and invoked federal diversity jurisdiction.  And notably, the district court gave a high level of deference to the law of the Ninth Circuit in reaching its conclusion, adopting the standard for determining whether a state is a real party in interest established by Department of Fair Employment & Housing v. Lucent Technologies, Inc., 642 F.3d 728 (9th Cir. 2011).  See contra In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (Ginsburg, J.) ("the law of a transferor forum on a federal question . . . merits close consideration, but does not have stare decisis effect in a transferee forum situated in another circuit"), aff'd sub nom. Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989).

The Court is not persuaded by the reasoning of In re Avandia Marketing, or the reasoning of the Court of Appeals for the Ninth Circuit in Lucent, as to the standard for determining whether a state is a real party in interest when it brings a *parens patriae* suit to enforce its consumer protection laws and also seeks restitution for specific state citizens.[2]

---

[2] The Court further notes that these decisions rely on reasoning that has been negated by the Supreme Court.  The full reasoning of Missouri, Kansas & Texas Railway Co. v. Hickman, 183 U.S. 53 (1901), which underlies these cases, bears unpacking.  In that case, the Missouri state railway board, which had authority to regulate rates for rail travel, ordered a railway company to discontinue its excessive rates, and the company refused to comply.  Id. at 57.  Eventually, the

6

To determine if Pennsylvania is the real party in interest to this suit, the Court merely asks if the state has a genuine "quasi-sovereign interest" in the litigation that stands apart "from the interests of particular private parties." Broselow, 319 F.3d at 609. Here, if the Commonwealth's suit succeeds, Pennsylvania stands to gain money in its general treasury through civil penalties, as well as an injunction ordering Defendants to comply with the relevant consumer protection statutes. This suffices. While it is also true that alleged victims, who were

---

case reached the Supreme Court, which addressed whether the state of Missouri was the real party in interest such that diversity would be defeated. Id. at 58. The Court reasoned that, should the commissioners prevail, the state would be unable "to recover any money for the state" and so "[i]ts results will not inure to the benefit of the state as a state in any degree." Id. at 59. Rather, the parties who would benefit or lose "are the railway company, on the one hand, and they who use the bridge [subject to the regulated rates], on the other." Id. As for any interest that a state might have in enforcing its own statutes and orders apart from financial gain, the Court concluded: "It is true that the state has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws. But such general governmental interest is not that which makes the state, as an organized political community, a party in interest in the litigation." Id. at 60. This view of a state's interests in enforcing its consumer protection laws is contradicted by more recent Supreme Court precedent. In Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 428 U.S. 592 (1982), the Court traced the history of its evolving jurisprudence on *parens patriae* actions brought by states. Its analysis reached the following conclusion:

> In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party. The State must express a quasi-sovereign interest. . . . [C]ertain characteristics of such interests are so far evident. . . . **First, a State has a quasi-sovereign interest in the health and well-being-both physical and economic-of its residents in general.** . . .
>
> . . . **One helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers**.

Id. at 607 (emphasis added). The Court thus held that states have quasi-sovereign interests in the economic well-being of their citizens, and instructed lower courts to consider whether a state would likely legislate to validate such interests as a way to gauge the nature of the real party in interest. Here, there is no need to speculate. Pennsylvania enacted consumer protection statutes and has brought a suit to enforce them. The Supreme Court's analysis dictates that Pennsylvania is the real party in interest for jurisdictional purposes.

7

subject to Defendants' alleged deception, stand to gain restitution, this fact is not sufficient to render the state a mere nominal party, defeating the state's genuine quasi-sovereign interests in enforcing its consumer protection laws.

Accordingly, the Court finds that the Commonwealth of Pennsylvania is a real party in interest in this lawsuit, and that the Court lacks subject matter jurisdiction.

In light of this finding, IT IS HEREBY ORDERED THAT:

Plaintiff's Motion to Remand (Doc. 9) is GRANTED and the remaining pending motions on the docket (Docs. 4, 12) are DENIED without prejudice to refiling in state court. This case is REMANDED FORTHWITH to the Court of Common Pleas of Allegheny County, Pennsylvania (Civil Division, Case No. GD-18-9176).

IT IS SO ORDERED.


November 15, 2018                              s\Cathy Bissoon
                                                               Cathy Bissoon
                                                               United States District Judge


cc (via ECF email notification):

All Counsel of Record